UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**BRENDA K. HAMMACK,**

    **Plaintiff,**

v.                                               Civil Action No.  3:22cv111

**PHH MORTGAGE CORPORATION,**
**ROBERTSON, ANSCHUTZ, SCHNEID,**
**CRANE & PARTNERS, PLLC,**
**and**
**RAS TRUSTEE SERVICES, LLC,**

    **Defendants.**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### Preliminary Statement

1. This is an action filed by a homeowner seeking relief from an improper foreclosure that has been initiated. Plaintiff is a married woman whose husband now lives in a nursing home while she continues to reside in the family home. For many years, the home has been security for a reverse mortgage that was taken out more than a decade ago. She is able to meet all the conditions of the reverse mortgage and has kept the home insured and the taxes paid. Even though she is not in default on her reverse mortgage, Defendants improperly seek to foreclose on her home and make her homeless. Even after being notified that they were in error, Defendants have pushed forward with a foreclosure that is currently set for March 2, 2022. Defendants have caused her to be afraid of losing her home, to have to seek advice of counsel, and to have to file this lawsuit to stop the foreclosure. She asks this Court to order that the foreclosure proceeding be stopped, and that she recover statutory, actual, and punitive damages, plus her attorney's fees and costs.

2. In addition to the improper foreclosure, Defendants have also provided two different entities as the owner of the loan, Cascade Mortgage Funding Trust – HB4, and also Mortgage Assets Management Series I Trust. These two different entities have two different trustees, Wilmington Savings Fund Society, FSB, and Bank of New York Mellon Trust Company, N.A., respectively. Because Plaintiff is unsure which of Defendants' representations are true about the actual owner of the debt, Plaintiff is unable, at this time, to include the actual owner as a defendant in this action.

3. This Court has subject matter jurisdiction over this action pursuant to the Real Estate Services Procedure Act (RESPA), 12 U.S.C. § 2614, the Truth in Lending Act (TILA), 15 U.S.C. § 1640(e), the Fair Debt Collections Practices Act, and 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they arise out of the same set of facts as the federal claims and are so related to the federal claims as to form part of the same case or controversy.

**Parties**

4. Plaintiff Brenda K. Hammack ("Mrs. Hammack") is a frail 80-year-old woman who resides at 4006 Forest Hill Avenue, Richmond, Virginia, 23225. This home is where she raised her children and lived with her husband until he had to be moved to a nursing home.

5. Defendant PHH Mortgage Corporation ("PHH") is a foreign corporate entity with its principal place of business at 1 Mortgage Way, Mount Laurel, NJ, 08054, and its registered agent in Virginia is Corporation Service Company, 100 Shockoe Slip, Fl 2, Richmond Virginia, 23219-4100. It currently services the reverse mortgage that is secured by Mrs. Hammack's home.

6. PHH services numerous credit accounts which are "federally related home loans" as defined in 12 U.S.C. § 2602, in that they are secured by a lien on residential real property designed principally for the occupancy of from one to four families, and in that they are made by "creditors" who make or invest in residential real estate home equity accounts aggregating more than $1,000,000 per year. Plaintiff's reverse mortgage is one such account

7. Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("Robertson") is a debt collection law firm headquartered at 6409 Congress Avenue, Suite 100, Boca Raton, Florida, 33847, and its registered agent in Virginia is Vcorp Agent Services, Inc., 4701 Cox Rd., Suite 285, Glen Allen, Virginia 23060-9510, that was asked by PHH to collect an allegedly overdue debt from Mrs. Hammack.

8. Robertson is an entity that "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due for other parties, such that Robertson is a debt collector pursuant to 15 U.S.C. § 1692a(6), and is subject to the Federal Fair Debt Collection Practices Act.

9. Defendant RAS Trustee Services, LLC ("RAS") is a foreclosure trustee company debt headquartered at 4012 Raintree Road, Suite 100A, Chesapeake, Virginia, 23321, and its registered agent in Virginia is Vcorp Agent Services, Inc., 4701 Cox Rd., Suite 285, Glen Allen, Virginia, 23060-9510, that was asked to foreclose on Mrs. Hammack's home.

10. RAS is an entity that uses one or more instrumentalities of interstate commerce or the mails in a business the principal purpose of which is taking nonjudicial action to effect dispossession of property through enforcing security interests regarding debts owed or due or

asserted to be owed or due to other parties, such that RAS is a debt collector pursuant to 15 U.S.C. § 1692a(6).

## Statement of Facts

### *Mrs. Hammack's reverse mortgage loan*

11. In 2004, Mrs. Hammack obtained a reverse mortgage secured by her home on 4006 Forest Hill Avenue, in Richmond, Virginia.

12. This home is where she and her husband lived and raised their children.

13. Mrs. Hammack has continuously lived there, but her husband's medical condition required that he be moved into a nursing home.

14. The reverse mortgage was secured by a first Deed of Trust to the original creditor and a second Deed of Trust to the Department of Housing and Urban Development.

15. The reverse mortgage also included mortgage insurance backed by the federal government.

16. Because Mrs. Hammack's reverse mortgage is insured through the Department of Housing and Urban Development, that federal loan program and by extension the American taxpayer will be asked to cover the difference when the home is sold if the amount received is not sufficient to cover the debt.

17. As is common, the reverse mortgage was packaged and sold as part of an investment securitization process, and a servicer was appointed to service the loan for the entity owning the loan.

18. The various assignments that may have occurred of the original credit agreement are unknown to Mrs. Hammack, but they may have included Fannie Mae, or other such entities.

19. The reverse mortgage was incurred primarily for personal, family or household purposes, and thus falls within the purview of the FDCPA. 15 U.S.C. § 1692a(5).

20. The reverse mortgage allowed Mrs. Hammack to access some of her equity in her home without having to make a monthly payment while she continued to reside in her home.

21. Since obtaining the loan, Mrs. Hammack had kept her taxes and insurance paid.

22. Since obtaining the loan, Mrs. Hammack has never actually been in default on it.

23. For many years the loan was serviced by Financial Freedom.

24. Prior to May 2021, the reverse mortgage had been serviced by Celink, and servicing was then transferred to Reverse Mortgage Solutions, Inc.

25. The monthly statements for July and August 2021 came from Reverse Mortgage Solutions, Inc.

26. After August 2021 the servicing was transferred to PHH Mortgage Services.

### *As a debt collector, Robertson tries to collect a debt not owed*

27. Defendant Robertson is a law firm whose practice is focused on the collection of consumer debts.

28. Robertson regularly collects home loan debts that are owed or alleged to be owed to others.

29. Robertson regularly demands payment from consumers of claimed arrearages and provides to consumers both reinstatement quotes and itemizations of amounts that Robertson is attempting to collect.

30. On August 10, 2021, Robertson sent Mrs. Hammack the letter attached as Exhibit A.

31. The letter states that Robertson is attempting to collect $108,063.68 that is owed to Bank of New York Mellon Trust Company, N.A., as trustee for Mortgage Assets Management Series I Trust.

32. Exhibit A, and Robertson's other communications with Plaintiff, were made in an attempt to collect a debt that is regulated by the FDCPA.

33. Exhibit A is a dunning letter[1] that asserts money is owed by Mrs. Hammack to Mortgage Assets Management Series I Trust.

34. Actually, no money was due this entity.

35. By letter dated that same day, Robertson also offered to pay cash to Mrs. Hammack and her husband in exchange for a deed in lieu of foreclosure.

36. A true and correct copy of the letter discussing this offer is attached as Exhibit B.

37. Mrs. Hammack did not consider this offer because she owed no money to anyone regarding her reverse mortgage.

38. Robertson had not been contacted directly by Bank of New York Mellon Trust Company, N.A., regarding this alleged debt.

39. Instead, Robertson was contacted by some servicer for the holder of the reverse mortgage about the alleged debt.

40. Whether that servicer was Reverse Mortgage Solutions, Inc. or PHH or some other entity is not known to Mrs. Hammack.

### *Defendant PHH sends a letter falsely claiming a default occurred*

41. By letter dated October 7, 2021, PHH sent the letter attached as Exhibit C.

42. Exhibit C contains the false statement that the reverse mortgage is in default.

---

[1] A "dunning letter" is a letter demanding payment of a debt--*i.e.*, a collection notice. *DeCapri v. Law Offices of Shapiro, Brown & Alt*, 2014 U.S. Dist. Lexis 131979, * 1, n. 1 (E.D. Va. 2014); *Fariasantos v. Rosenberg & Associates, LLC*, 2014 WL 928206, *1, 2014 U.S. Dist. Lexis 30898, *3, (E.D. Va. 2014); *Bicking v. Law Offices of Rubenstein and Cogan*, 783 F. Supp. 2d 841, 842, n.1 (E.D. Va. 2011).

43. Exhibit C states that the owner of the loan is Cascade Funding Mortgage Trust-HB4.

44. Exhibit C does not identify the trustee for this Cascade Funding trust.

45. The trustee for this Cascade Funding trust is Wilmington Savings Fund Society, FSB.

46. Exhibit C informed Mrs. Hammack that unless she disputed the validity of the alleged debt, PHH would assume it was valid.

47. Exhibit C also informed Mrs. Hammack that if she requested in writing verification of the debt, then such verification would be mailed to her.

48. At the time that PHH sent Exhibit C, Defendants Robertson and RAS had already scheduled a foreclosure on behalf of Bank of New York Mellon Trust Company, N.A., trustee, for November 17, 2021, at 10:45 a.m.

49. Exhibit C makes no mention of this foreclosure.

50. Exhibit C makes no mention of the purported holder for whose benefit the foreclosure was scheduled.

### *Mrs. Hammack was confused and frightened about what was happening*

51. Mrs. Hammack knew about the scheduled foreclosure and did not understand why any of this was happening.

52. She has diabetes, heart problems, and has recently recovered from colon surgery.

53. Being threatened with homelessness affected her more than these medical conditions, and further aggravated them.

54. The stress of being told she was being foreclosed upon caused her blood sugar to go up and down, and when her blood sugar is low she is at risk of falling.

55. Because of the foreclosure process, Mrs. Hammack has had people walking onto her property to look at it and take pictures.

56. Because of the foreclosure process, Mrs. Hammack received many solicitations from entities who thought she was in default.

57. Mrs. Hammack's family tried to help her and were very concerned about how this was affecting her health.

58. For instance, as shown on the handwritten notes on the foreclosure notice, Exhibit D, when they called both the phone numbers for Robertson that were listed as the contact numbers to get any information about the foreclosure sale, they could only get a message that stated "the user mailbox is full."

59. Mrs. Hammack finally had to call a lawyer and retain counsel in an effort to find out what was going on.

### *Mrs. Hammack disputes the debt and tries to learn what has happened*

60. Through counsel, Mrs. Hammack then sent a letter to PHH on November 3, 2021.

61. A true and correct copy of this letter is attached as Exhibit E.

62. Exhibit E is a Notice of Error and an Information Request under the Real Estate Settlement Procedures Act ("RESPA").

63. Exhibit E is also a written request for the identity of the current holder.

64. Also on that day, through counsel, Mrs. Hammack sent a letter to RAS, care of its counsel, Robertson, that disputed the debt and requested verification and the identity of the current holder.

65. A true and correct copy of this letter is attached as Exhibit F.

66. PHH received Exhibit E.

67. RAS, through Robertson, its counsel, received Exhibit F.

Page 8

68. On November 4, 2021, Ms. Hammack through counsel sent additional documentation to RAS, through its counsel Robertson, that Mrs. Hammack had kept the property insured and all the taxes paid.

69. RAS was also asked to cancel or at minimum postpone the foreclosure sale.

70. RAS, through Robertson, its counsel, received this additional correspondence.

71. On November 8, 2021, PHH responded to Mrs. Hammack's November 3 RESPA request by stating it could not access the account with the information that had been provided.

72. Given that the November 3 RESPA request included PHH's own identifying information about the reverse mortgage, this response was quite puzzling.

73. A true and accurate copy of November 8, 2021 email response from PHH's Research Department is attached as Exhibit G.

74. On November 8, 2021, by counsel, Mrs. Hammack sent further information to PHH, including copies of two letters which were both mailed and emailed to PHH on November 3, 2021.

75. A true and accurate copy of that further correspondence is attached as Exhibit H.

76. Exhibit H is a Notice of Error and an Information Request under the RESPA.

77. RAS, through its counsel Robertson, did confirm on November 11, 2021, that it was reaching out to PHH about this matter.

78. On November 15, 2021, by counsel, RAS agreed to postpone the first foreclosure sale.

79. PHH never provided any other responses to Mrs. Hammack's RESPA requests.

80. PHH never confirmed the identity of the current holder of the reverse mortgage.

81. RAS never confirmed the identity of the current holder of the reverse mortgage.

82. Neither RAS nor PHH verified the debt.

83. RAS did agree to postpone the first foreclosure sale.

*Defendants schedule a second foreclosure sale instead of responding to requests*

84. Rather than respond to Mrs. Hammack's requests for information, Defendants scheduled a second foreclosure for March 2, 2022.

85. Defendants scheduled this second foreclosure despite knowing that Mrs. Hammack had paid all her taxes and insurance.

86. Defendants scheduled this second foreclosure despite knowing that Mrs. Hammack was not in default.

87. Defendants ran an advertisement about this second foreclosure.

88. A true and correct copy of that advertisement for the second foreclosure is attached as Exhibit I.

89. Exhibit I makes the false assertion that Mrs. Hammack's home is properly the subject of a foreclosure.

90. This false statement implies that Mrs. Hammack is in default of her obligations.

91. As a result of Exhibit I, Mrs. Hammack is again receiving solicitations from third parties, including the solicitations collected in Exhibit J.

92. This second foreclosure process and these solicitations have again caused Mrs. Hammack tremendous distress, aggravation, and concern and caused her to worry that she will lose her family home and become homeless.

93. The stress is so great that she has difficulty talking about these events without breaking into tears.

94. Because Defendants did not confirm the identity of the current holder, Mrs. Hammack does not even know the current holder on whose behalf all of this is really taking place.

95. As a result of the acts and omissions of the Defendants, Plaintiff has suffered and continues to suffer actual damages and injury, including but not limited to, mental anguish and suffering, loss of peace of mind, and the threatened loss of her home even though she is not in default.

96. Defendants' actions are in such reckless disregard of Mrs. Hammack's rights that punitive damages are properly assessed against Defendants.

## FIRST CAUSE OF ACTION
## DEFAMATION
## All Defendants

97. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

98. Defendants published a false statement about Mrs. Hammack in Exhibit I that implied that she was in default of her obligations.

99. That publication was reviewed by many different people who understood it to mean that Mrs. Hammack was in default of her obligations.

100. Many of those people who viewed it then contacted Mrs. Hammack.

101. Mrs. Hammack has suffered damages as result of that publication.

102. Defendants published this false information knowing it was not true or in reckless disregard of its truth, such that punitive damages should be assessed against them.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### Defendant Robertson

103. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

104. Defendant Robertson violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10) by making a false representation of the character, amount, or legal status of the alleged debt in Exhibits A, B, and I when it misrepresented in each of these that Mrs. Hammack was in default on her reverse mortgage.

105. Plaintiff is therefore entitled to actual and statutory damages against Defendant Robertson, as well as her reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
### Defendant RAS

106. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

107. Defendant RAS violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(6) by threatening to take nonjudicial action to dispossess Mrs. Hammack of her ownership of her home when there is no present right to do so.

108. Plaintiff is therefore entitled to actual and statutory damages against Defendant RAS, as well as her reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1692k.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE TRUTH IN LENDING ACT
## Defendant PHH

109. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

110. Defendant PHH violated the Truth in Lending Act, 15 U.S.C. § 1641(f)(2) by not identifying the owner of the reverse mortgage after Mrs. Hammack requested it in writing.

111. Plaintiff is therefore entitled to actual and statutory damages against Defendant PHH, as well as her reasonable attorney's fees and costs, pursuant to 15 U.S.C. § 1640(a).

## FIFTH CAUSE OF ACTION
## NEGLIGENCE
## Defendant PHH

112. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

113. Defendant PHH was to properly service the reverse mortgage under its contract with the holder, and under the federal requirements for servicing reverse mortgages insured by the federal government.

114. PHH assumed the duty towards Mrs. Hammack when it agreed to service the mortgage.

115. PHH breached that duty by claiming she was in default when she was not.

116. PHH breached that duty by not properly investigating the information that Mrs. Hammack presented that showed she was not in default.

117. Plaintiff was harmed by PHH's actions, such that she may recover her actual damages.

118. Defendant's negligence was gross negligence in such reckless disregard of its duties and the facts that punitive damages should be assessed against it.

## SIXTH CAUSE OF ACTION
## VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## Defendant PHH

119. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

120. As the entity that performs the day-to-day management of credit accounts secured by homes, servicers such as PHH "can have a direct and profound impact on borrowers." See Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10699 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024) [hereinafter 2013 Regulation X Amendments].

121. "RESPA is a remedial consumer protection statute and imposes obligations upon servicers of federally related mortgage home equity accounts." 2013 Regulation X Amendments, supra at 10709.

122. The remedial nature of RESPA provides a necessary incentive for mortgage servicers to comply with its requirements. See 2013 Regulation X Amendments, supra at 10701.

123. Exhibit E was both a Notice of Error and a Request for Information and was a Qualified Written Request ("QWR"). 12 U.S.C. § 2605(e)(1).

124. Exhibit H was both a Notice of Error and a Request for Information and was a QWR. 12 U.S.C. § 2605(e)(1).

125. In violation of 12 U.S.C. § 2605(e)(2), PHH failed to respond appropriately to the Plaintiff's two QWRs.

126. In violation of 12 U.S.C. § 2605(k)(1)(E), PHH failed to follow the regulations established by Consumer Financial Protection Bureau that carry out the purposes of RESPA after receiving the Plaintiff's QWRs.

127. PHH's violations are part of a pattern and practice of failing to properly to respond to RESPA requests.

128. Pursuant to 12 U.S.C. § 2605(f), Plaintiff is allowed to recover her actual damages, statutory damages, and attorneys' fees for these RESPA violations.

**WHEREFORE**, the Plaintiff, by counsel, respectfully prays that this honorable court award her the following relief:

1. Actual damages pursuant to all the claims;

2. Statutory damages up to $1,000 against both Robertson and RSA pursuant to FDCPA, 15 U.S.C. § 1692k(2)(A);

3. Statutory damages against PHH pursuant to TILA;

4. Statutory damages against PHH pursuant to RESPA.

5. Declaratory judgment that Plaintiff is not in default on her reverse mortgage;

6. Injunctive relief prohibiting Defendants from conducting a foreclosure;

7. Punitive damages under the defamation and negligence claims;

8. Costs and reasonable attorneys' fees pursuant the FDCPA, the TILA, and RESPA; and

9. Such other or further relief as the Court deems proper.

TRIAL BY JURY IS DEMANDED

    Respectfully submitted,
    BRENDA K. HAMMACK
    By Counsel

\_\_\_/s/_____
By: Dale W. Pittman, VSB#15673
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
The Eliza Spotswood House
112-A West Tabb Street
Petersburg, VA 23803
(804) 861-6000
(804) 861-3368 Facsimile
dale@pittmanlawoffice.com

Thomas D. Domonoske, VSB #35434
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1A
Newport News, VA 23606
(540) 442-7706
tom@clalegal.com

Counsel for Plaintiff