

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRENDA K. HAMMACK,

    Plaintiffs,
v.                                            Civil Action No. 3:22-cv-111

PHH MORTGAGE CORPORATION, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on the Defendants' Motions to Dismiss (the "Motions").[1] Having discussed the Motions with counsel during the Initial Pretrial Conference on June 15, 2022 and having reviewed the supporting, opposing, and reply memoranda (ECF Nos. 27, 29, 33, 35, 36, 40, 44, 49) and, for the reasons set forth below, the Motions will be granted as to Count I Defamation (Am. Compl. ¶¶ 111-125) and Count V Negligence (Id. ¶¶ 146-154). See ECF No. 21. The dismissal of Counts I and V is without prejudice to the filing of a Second Amended Complaint if counsel can (within the constraints of Fed. R. Civ. P. 11) satisfy the requisite elements of those claims (or either of them) under Virginia law.

---

[1] See DEFENDANT PHH MORTGAGE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 26); ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC AND RAS TRUSTEE SERVICES, LLC's MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) (ECF No. 28); and DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR CASCADE FUNDING MORTGAGE TRUST - HB4'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 32).

## BACKGROUND

Brenda Hammack is an 80-year-old woman whose husband lives in a nursing home while she continues to reside in the family home. Am. Compl. ¶ 1. In 2004, Hammack obtained a reverse mortgage that was secured by a first Deed of Trust to the original creditor and a second Deed of Trust to the United States Department of Housing and Urban Development. Cascade Mortgage Funding Trust ("Cascade") through its trustee, Wilmington Savings Fund Society, is the current owner of the reverse mortgage. Id. ¶ 11. PHH Mortgage Corporation ("PHH") currently services the reverse mortgage. Id. ¶¶ 5, 12. Hammack attests that, as required by the contract documents, she has kept her taxes and insurance paid since obtaining the loan and that she has never been in default on the loan. Id. ¶¶ 22, 23.

In August 2021, Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("Robertson"), a law firm, sent a "dunning letter" attempting to collect an allegedly overdue debt of $108,063.68 from Hammack. Id. ¶¶ 7, 31, 32, 34; Ex. A (ECF No. 21-1). Robertson also offered to pay cash to Hammack in exchange for a deed in lieu of foreclosure. Id. ¶ 37; Ex. B (ECF No. 21-2). The AMENDED COMPLAINT does not specify whether PHH or another servicer, Reverse Mortgage Solutions, Inc. (who at some point serviced the reversed mortgage) asked Robertson to contact Hammack regarding the debt. Id. ¶¶ 40-42.

2

On October 7, 2021, PHH sent Hammack a letter stating that her reverse mortgage was in default and identifying the owner of the loan as Cascade. Id. ¶¶ 433-45; Ex. C (ECF No. 21-3). At the time that PHH sent Exhibit C, Robertson and RAS Trustee Services, LLC ("RAS"), a foreclosure trustee company, had already scheduled a foreclosure for November 17, 2021, at 10:45 a.m. Id. ¶¶ 9, 50; Ex. D (ECF No. 21-4).[2] Exhibit C does not contain this foreclosure information. Id. ¶ 51.

As a result of this foreclosure notice, Hammack alleges that she became confused and frightened, and that "being threatened with homelessness affected her more than" her then current medical afflictions, including diabetes, heart issues, and a recent colon surgery. Id. ¶¶ 53-55. Hammack claims that the ensuing stress adversely impacted her health. Id. ¶ 59. Hammack's family attempted to help her determine why she had received the notice, but family members were not able to communicate with any of the Defendants. Id. Hammack began receiving solicitations from entities who believed that she was in default and experienced strangers walking onto her property to view her home. Id. ¶¶ 57, 58.

In an effort to understand what was happening to her home, Hammack retained counsel who contacted PHH and the RAS Defendants

---

[2]   As a threshold matter, Defendants Robertson and RAS Trustee Services, LLC (the "Substitute Trustee") filed a joint Motion to Dismiss and accompanying memorandum. See ECF Nos. 28, 29. They collectively refer to themselves as the "RAS Defendants".

3

in November 2021. On behalf of Hammack, counsel formally disputed the default and asked for verification of the alleged default. Id. ¶ 68; Ex. D (ECF No. 21-4); Ex. E (ECF No. 21-5). Hammack's counsel provided ample information about her account and mortgage, and showed how the account was not in default. Nonetheless, PHH informed Hammack that it could not verify the account without more information. See Ex. G (ECF No. 21-7).

On November 11, 2021, RAS, through its counsel Robertson, represented that it was reaching out to PHH about this matter; and on, November 15, 2021, RAS agreed to postpone the first foreclosure sale. Id. ¶¶ 84, 85, 90. PHH never provided any other responses to Hammack's requests and never confirmed the identity of the current holder of the reverse mortgage. Id. ¶¶ 86, 87. RAS also never confirmed the identity of the current holder of the reverse mortgage. Id. ¶ 88. Neither RAS nor PHH verified the alleged default on the debt. Id. ¶ 89.

Then, on March 2, 2022, a second foreclosure sale was advertised. Id. ¶¶ 91, 99; Ex. I (ECF No. 21-9). Hammack again began receiving solicitations from third parties, which triggered "tremendous distress, aggravation, and concern and caused her to worry that she will lose her family home and become homeless." Id. ¶¶ 101, 102, 103; Ex. J (ECF No. 21-10). After Hammack commenced the present action, Defendants agreed to cancel the second foreclosure sale. Id. ¶ 106.

Hammack claims that Defendants' actions and reckless disregard have caused her "actual damages and injury, including but not limited to, mental anguish and suffering, loss of peace of mind, and the reasonable fear that she will again be threatened with loss of her home even though she is not and never was in default." Id. ¶ 105. Thus, Hammack asserts the following claims:

> Count I Defamation (against all Defendants);
>
> Count II Violation of the Federal Fair Debt Collection Practices Act ("FDCPA") (against Robertson);
>
> Count III Violation of FDCPA (against RAS);
>
> Count IV Violation of the Truth in Lending Act (against Cascade);
>
> Count V Negligence (against PHH);
>
> Count VI Violation of the Real Estate Settlement Procedures Act (against PHH); and
>
> Count VII Declaratory Judgment (against Cascade).

Defendants have filed three separate Motions to Dismiss. All Defendants seek dismissal of Count I Defamation. The RAS Defendants move to dismiss Count II Violation of FDCPA (Robertson) and Count III Violation of FDCPA (RAS). PHH moves to dismiss Count V Negligence. Defendants do not seek dismissal of Counts IV, VI, and VII. For the following reasons, Count I Defamation and Count V Negligence will be dismissed without prejudice.

5

**THE MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

Motions to dismiss based upon Fed. R. Civ. P. 12(b)(6) are evaluated under the following standards:

> In [considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss], we must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party. To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" A claim is "plausible on its face," if a plaintiff can demonstrate more than "a sheer possibility that a defendant has acted unlawfully."

Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." Rockville Cars, 891 F.3d at 145 (citation omitted). And, the Court may review "documents that are explicitly incorporated into the complaint by reference." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (E.D. Va. 2016).

Notwithstanding those basic principles, however, the Court does not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (citation omitted). "Threadbare recitals of

6

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**A. Count I: Defamation**

Under Virginia law, Hammack is required to plead and prove the following elements to make out a viable defamation claim: (1) publication by the defendant(s), (2) of actionable statement regarding the plaintiff, and (3) made with the requisite intent. Skillstorm, Inc. v. Elec. Data Sys., LLC, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009). A statement is actionable if it contains a false assertion of fact that "tend[s] . . . to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993) (applying Virginia law) (quoting Restatement (Second) of Torts § 559). Defamatory statements include "those that make the plaintiff appear odious, infamous, or ridiculous" rather than statements that are "merely offensive or unpleasant". Id. (citation omitted). "Speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as stating actual facts about a person cannot form the basis of a common law defamation action." Yeagle v. Collegiate Times, 255 Va. 293, 295 (1998). "Under Virginia law, defamation must not only be particularly pled, but the pleading must set out the exact allegedly defamatory words spoken or written." Wolf v. Federal

7

Nat. Mortg. Ass'n, 830 F. Supp. 2d 153, 168 (W.D. Va. 2011) (citing Fuste v. Riverside Healthcare Ass'n, 265 Va. 127, 134 (2003)).

Among other arguments, Defendants contend that Hammack has not pled any facts demonstrating that she suffered reputational harm as a result of the foreclosure publication. ECF No. 27 at 7-8; ECF No. 29 at 5-10; ECF No. 33 at 6-7. The Court agrees: Hammack has not pled sufficient factual allegations establishing an actionable statement that resulted in her reputation being tarnished.

The foreclosure sale notice does not appear to be an actionable statement for defamation purposes because Hammack has not pled "a reasonable inference that [Defendants] caused harm to [her] reputation" in publishing the foreclosure notices. Blagogee v. Equity Trustees, LLC, No. 1:10-CV-13, 2010 WL 2933963, at *6 (E.D. Va. 2010). Although the foreclosure statements were false, Hammack has not pled that the statements harmed her reputation enough so "as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her]." Id. (quoting Skillstorm, 666 F. Supp. at 619). Hammack does allege that the foreclosure publication caused "emotional upset and embarrassment", Am. Compl. ¶ 121, but the asserted facts do not allow a plausible inference that Hammack was, in fact, defamed.

Accordingly, Count I Defamation against PHH, the RAS Defendants, and Cascade will be dismissed without prejudice. If

8

Plaintiff can, within the constraints of Fed. R. Civ. P. 11, satisfy the reputational injury element of a defamation claim under Virginia law, counsel may file a Second Amended Complaint.

## B. Counts II and III: Violations of FDCPA

The RAS Defendants contend that Hammack fails to allege a viable FDCPA claim in Counts II and III of the AMENDED COMPLAINT. ECF No. 29 at 10. The Court disagrees and, therefore, denies the RAS Defendants' MOTION TO DISMISS (ECF No. 28) as to Count II Violation of FDCPA (Robertson) and Count III Violation of FDCPA (RAS) of the AMENDED COMPLAINT.

In Count II, Hammack alleges that Robertson violated four provisions of FDCPA. Am. Compl. ¶¶ 127, 128, 129 (citing 15 U.S.C. §§ 1692e(2)(A), 1692e(10), 1692e(5), and 1692f(6)). In Count III, Hammack claims that RAS Services violated FDCPA by threatening to unlawfully take nonjudicial action to foreclose on her home. Id. ¶ 132 (citing 15 U.S.C. § 1692f(6)).

To assert a valid FDCPA claim,

> [A] plaintiff must allege that: (1) the defendant constitutes a debt collector as defined by the FDCPA; (2) the plaintiff was the object of collection activity arising from a consumer debt as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA, such as using a false, deceptive, or misleading representation or means in connection with the collection of any debt.

Walker v. Hill, No. 3:20cv149, 2021 WL 1062238, at *10 (E.D. Va.

9

Mar. 19, 2021).

First, the RAS Defendants assert that Counts II and III of the AMENDED COMPLAINT are defective because those counts do not adequately plead that the RAS Defendants acted as debt collectors. Debt collectors do not include entities, such as law firms, that seek to enforce security interests against debtors through nonjudicial foreclosure proceedings. <u>Obduskey v. McCarthy & Holthus LLP</u>, 139 S. Ct. 1029 (2019). However, when entities engage in more than security interest enforcement by sending consumers letters that demand payment of a debt, then those entities act as debt collectors under FDCPA. <u>See</u> <u>Walker</u>, No. 3:20cv149, at *12. Exhibit A (ECF No. 21-1) is a so-called "dunning letter" that the RAS Defendants sent to Hammack, which explicitly states: THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. Therefore, the RAS Defendants at this stage must be considered debt collectors for the purposes of FDCPA.

Second, the RAS Defendants aver that Hammack has not adequately alleged that RAS Services, as the Substitute Trustee, engaged in debt collection activity under FDCPA. Relying on <u>Luther v. Wells Fargo Bank, N.A.</u>, the RAS Defendants argue that the Court has decided this issue. However, <u>Luther</u> was decided by the United

10

States District Court for the Western District, not "this Court."[3]

Wholly apart from the citation error, the RAS Defendants note that the debt collectors in Luther sent a notice that did not make an "express demand for payment", and instead, "the notice of trustee's sale merely informed Luther and the public of the date and time of the foreclosure sale." ECF No. 29 at 14-15. In the present matter, Exhibit D (ECF No. 21-4) contains notice of the trustee's sale of Hammack's home, including the time and date of the sale, and a copy of the executed Appointment of Substitute Trustee. However, the notice also contains a literal bold warning that states: "this is an attempt to collect a debt". Ex. D (ECF No. 21-4). Further, the notice highlights the remaining principal balance ($108,063.68) and offers the RAS Defendants' assistance "to obtain the amount necessary to cure the default or pay off the loan." Id. Thus, unlike the notice in Luther, the RAS Defendants sent a letter containing an express "attempt to collect a debt" and the amount of the debt itself.

In sum, the Court finds this notice to be a debt collection activity and the AMENDED COMPLAINT (ECF No. 21) sufficiently

---

[3] See ECF No. 29 at 14 (stating that "In this District, . . ." and referencing "Luther v. Wells Fargo Bank, N.A., No. 4:13cv72, 2014 WL 3728173, at *8 (E.D. Va. Jul. 24, 2014)" (emphasis added). The Western District decided Luther v. Wells Fargo Bank, N.A. and the correct citation is Luther v. Wells Fargo Bank, N.A., No. 4:13cv72, 2014 WL 3728173, at *8 (W.D. Va. Jul. 24, 2014). (emphasis added). Thus, any reference by defendants to "This Court" or "This District" is inaccurate.

11

alleges that the RAS Defendants are acting as debt collectors. Accordingly, the Court will deny the RAS Defendants' MOTION TO DISMISS Counts II and III of the AMENDED COMPLAINT.

### C. Count V: Negligence

PHH asserts that Virginia's source of duty rule precludes Count V. ECF No. 27 at 13. In Virginia, the source of the duty rule prohibits tort actions that "arise from a duty owed solely through contract." Lowe v. Wells Fargo Bank, N.A., No. 3:18cv126, 2018 WL 3748418, at *12 (E.D. Va. Jul. 9, 2018) (citing Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 347 (1998)). "To determine whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." Id. Thus, the Court must contemplate:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

Oleyar v. Kerr, Trustee, 217 Va. 88, 90 (1976). However, "[i]n certain circumstances, a tort action may be maintained despite any contractual relationship if the defendant breached an independent common law duty." Lowe, No. 3:18cv126, at *12 (citing Richmond

12

Metro. Auth., 256 Va. at 558).

Hammack alleges that "PHH was to properly service the reverse mortgage under its contract with the holder, and under the federal requirements for servicing reverse mortgages insured by the federal government." Am. Compl. ¶ 147 (emphasis added). Additionally, "PHH assumed the duty towards Mrs. Hammack when it agreed to service the mortgage." Id. ¶ 148. Hammack asserts that she does not have a contract with PHH and thus, cannot bring a contract action against PHH. Id. ¶¶ 151, 152.

The relationship between Hammack and PHH appears to be entrenched in an underlying contract between PHH and the original creditor. The AMENDED COMPLAINT states that "[t]he reverse mortgage was secured by a first Deed of Trust to the original creditor and a second Deed of Trust to the Department of Housing and Urban Development." Am. Compl. ¶ 15. The Supreme Court of Virginia has recognized a deed of trust as a contract under the law and characterized such claims arising out of deeds of trust as contractual rather than tort. See Crosby v. ALG Trustee, LLC, 296 Va. 561, 568 (2018).

Therefore, Hammack's lack of direct contract with PHH notwithstanding, her claim for negligence appears to be rooted in contractual law, and thus, it is subject to the source of duty rule. Accordingly, Count V for negligence will be dismissed. However, the dismissal is without prejudice so that if the Court

13

has misapprehended the facts, a Second Amended Complaint can be filed.

### Conclusion

For the foregoing reasons, Count I Defamation and Count V Negligence of the AMENDED COMPLAINT will be dismissed without prejudice. To that end, the DEFENDANT PHH MORTGAGE CORPORATION'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 26); ROBERTSON, ANSCHUTZ, SCHNEID, CRANE & PARTNERS, PLLC AND RAS TRUSTEE SERVICES, LLC's MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6) (ECF No. 28); and DEFENDANT WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE FOR CASCADE FUNDING MORTGAGE TRUST - HB4'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (ECF No. 32) will be granted. The RAS Defendants' MOTION TO DISMISS (ECF No. 28) Count II Violation of FDCPA and Count III Violation of FDCPA will be denied.

It is SO ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: June 29, 2022

14